The KNIGHT PUBLISHING COMPANY, d/b/a the Charlotte Observer and the Charlotte News; and William "Skip" Hidlay, Plaintiffs,

v.

The UNITED STATES DEPARTMENT OF JUSTICE, Defendant.

No. C–C–84–0510–P.

United States District Court, W.D. North Carolina, Charlotte Division.

March 26, 1986.

Jonathan E. Buchan, H. Landis Wade, Jr., Helms, Mulliss & Johnston, Charlotte, N.C., for plaintiffs.

Charles E. Lyons, U.S. Atty., Charlotte, N.C., Robert J. Chester, Special Agent, F.B.I., Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Plaintiffs' Motion to (1) Vacate Summary Judgment and Orders entered December 18, 1985, (2) Grant hearing and reconsideration, (3) Clarification of any final judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

This Court, in its Summary Judgment, filed December 18, 1985, stated:

Based on the pleadings, affidavits, documents, and briefs filed by the parties, the Court finds there is no genuine issue as to any material fact and that the Defendant is entitled to judgment as a matter of law.

The Court simultaneously with filing the Summary Judgment filed a Memorandum of Decision.

The Court has reconsidered this matter and concludes that its Summary Judgment is supported by the record and will deny the Plaintiffs' Motion to Vacate the Summary Judgment, and grant a hearing.

### 1. Motion to Vacate Summary Judgment

The Plaintiffs in their Motion to Vacate the Summary Judgment filed December 18, 1985 state that there are numerous factual issues material to this litigation which the Court has overlooked in determining that there is no genuine issue as to any material fact, specifically:

(A) The continuing or noncontinuing nature of each particular investigation.

The Plaintiffs in their Memorandum supporting its Motion on Page 7, Paragraph (A) say:

The defendant *is on record* (emphasis added) saying that the Colcor investigation which began in 1980 was a "two-year undercover investigation of corruption", *see* Exhibit A to Plaintiffs' Request for Admission dated December 12, 1984.

What the Plaintiffs do not say is that the quoted language does not appear in an affidavit or other pleading in *this* case. The Plaintiffs have taken out of context a statement in the Brief for the United States filed in the Fourth Circuit Court of Appeals in the case of *United States, Appellee, v. J. Wilton Hunt, Jr., Appellant* 749 F.2d 1078 (4th Cir.). The complete statement under "Statement of Facts" on Page 2 of that brief was:

Beginning in 1980 the FBI engaged in a two-year undercover investigation of corruption in Columbus County, North Carolina . . .

Then on Page 13 of the brief the statement appears:

Appellant and Carroll were indicted approximately eight months later on July 29, 1982.

The Court is nonplussed as to why the Plaintiffs should contend that the statement cited by the Plaintiffs creates any factual basis for the Plaintiffs' statement that "... the defendant has gone on record saying that the Colcor investigation began in 1980, was a 'two-year investigation of corruption' ..." In the first place, the statement is a summary of facts set forth in a brief by the United States as appellee filed in the Fourth Circuit Court of Appeals in response to a defendant's appeal in a criminal case. Secondly, and more importantly, the statement does not in any way indicate that Defendant has terminated its investigation. It obviously refers to the fact that the indictment giving rise to the criminal conviction from which the Defendant was appealing was the result of an investigation commenced two years previously. On the other hand, as the Defendant points out in its Memorandum in opposition to Plaintiffs' Motion to Vacate Summary Judgment, filed January 27, 1986, the Defendant has filed affidavits to the effect that the operations Colcor, Superglide, and Countervail are ongoing operations. Further, the Court has stated in its Order filed August 28, 1985:

> The Court, however, is further of the opinion that since public disclosure *could compromise ongoing investigations* the index should be an *in camera* Vaughn Index. (Emphasis added).

Reference is also made to Robert J. Chester's affidavit filed March 22, 1985 in which he attests on Pages 13 and 14 that COLCOR is an active ongoing Racketeer Influenced and Corrupt Organization investigation. The same affidavit on Page 16 attests that SUPERGLIDE and COUNTERVAIL are ongoing and pending Anti-Racketeering investigations. The same affidavit on Page 17, attests that GREENK-IL files contain material relating to pending and prospective criminal enforcement proceedings and that the CWP file concerns an active investigation. On Page 18 the same affidavit attests that the files on these investigations relate to pending and prospective criminal enforcement proceedings.

The investigatory records sought were clearly compiled for law enforcement purposes, and production of such records would obviously interfere with enforcement proceedings of what the Defendant contends through its affidavits, which are not all *in camera*, are ongoing investigations except the investigation into the Communist Workers' Party of North Carolina (CWP).

The Plaintiffs have not filed any affidavit or provided any evidence which would create an issue as to the fact of the ongoing nature of the investigations, other than the CWP, and as to that investigation the Defendant is currently processing documents for release.

■ (B) The segregability of exempt documents from non-exempt documents.

The Defendant, in the March 22, 1985 affidavit by Mr. Chester, has explained that "no document from these files could be released without providing information that might threaten the investigations." The Plaintiffs state in their Memorandum, filed December 30, 1985: "The Court simply concludes on Page 19 of the Memorandum of Decision that it is satisfied that the affidavits, together with the *Vaughn* Index reveal that the documents sought cannot be reasonably segregated after deletions of the portions which are exempt under this subsection...." The Plaintiffs further state in that Memorandum: ".... Furthermore, it is quite conceivable that whole documents may be non-exempt thereby avoiding the burden of line by line scrutiny."

In response to the Plaintiffs' first statement, it is this Court's job to review the affidavits and documents filed by both parties and reach a conclusion. The Court has done that and stated its conclusion based on Defendant's affidavits and the *Vaughn* Index. The Plaintiffs have failed to refute the Defendant's affidavits by any factual

affidavits. As to the Plaintiffs' second statement the Court pointed out in its Decision that ".... It is neither consistent with the Act nor wise use of increasingly burdened judicial resources to rely on *in camera* view of documents as the principal tool for review of segregability disputes, since neither legislative history nor court decisions require courts to conduct *in camera* line-by-line analysis of withheld documents whenever an FOIA plaintiff claims they may not be exempt material which was reasonably segregable but not disclosed." (Citing cases.)

The Plaintiffs have not divulged to this Court how the Court could determine segregability without reading in excess of 72,-600 pages of documents, which number is apparently increasing, in order to determine whether in the Court's opinion the documents are segregable. The Court therefore has relied on the affidavits filed by the Defendant together with the Modified *Vaughn Index.* Otherwise, the Court would be required to read all the documents requested, first to determine if the document is not subject to the exemption claimed by the Defendant, and then to determine if any part would be segregable. This would obviously be a monumental task for the Court and could not be delegated to someone else because of the obviously sensitive nature of the material and would consume more of the Court's time than is warranted by the Plaintiffs' request.

This is particularly true in view of lack of any evidence produced by the Plaintiffs to contradict the Defendant's evidence in the form of affidavits and *Vaughn Index* that no document could be released without providing information that might threaten the ongoing investigations.

■ (C) The adequacy of the search by the Defendant with respect to each FOIA request.

Here, the Plaintiffs are complaining that the Defendant has not identified what search was made, who made the search and the number of the records within the scope of each request.

Again, the Plaintiffs have failed to produce any facts to dispute the Defendant's declarations, but instead have relied on their suspicions and speculation without any foundation for those assertions.

(D) The 'bad faith' of the Defendant in its conduct of various investigations, responding to FOIA requests, responding to Court orders, preparing affidavits, filing materials with the Court, responding to discovery, and offering inconsistent declarations.

■ The Plaintiffs have relied to a large extent on a *Report of the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary House of Representatives together with Dissenting Views Ninety Eight Congress Second Session,* filed as an Exhibit to its Requests for Admission, dated December 6, 1984. (The Dissenting views were not included.) Then, on Page 15 of its Memorandum, filed December 30, 1985, the Plaintiffs state: "... these *facts* (emphasis added) illustrate and support the allegations of bad faith conduct of the Defendant in the Colcor and related investigations. The 'facts' distinguish this case from the typical case where there are mere allegations by the Plaintiffs of government misconduct."

As the Plaintiffs well know, congressional committee hearings are oft time conducted in a circus atmosphere, with a gracious plenty of posturing by the politicians for T.V. publicity in large part for the benefit of constituents back home whom the particular representative wishes to impress with his bellicose assault on a particular government agency, the budget for which is subject to the whims of Congress.

This "circus" is hardly conducive to the development of facts, but more to entertainment of the television audience. The Court does not look to the reports of such activities as productive of any facts which would persuade the Court one way or the other.

Rather, this Court has looked to the hundreds of pages of briefs, affidavits, memoranda, and orders of this Court, all of

which persuade this Court that the Defendant has acted in good faith in its investigations.

The Court has stated its displeasure with the Defendant's sometimes dilatory responses to the Court's Orders, but after reviewing the herculean task the Defendant was faced with in preparing its responses and of which the Court was unaware largely because of Defendant's dilatory responses, the Court is unable now to hold the Defendant has acted in bad faith in this proceeding.

The other contentions by the Plaintiffs are:

(1) That the government has failed to carry its burden of proof with respect to the claimed exemptions and the Court has unduly relied on agency affidavits which were not reasonably specific and offered conclusory statements.

The Court disagrees and finds that the record in this case adequately supports the position that the government's affidavits are reasonably specific and adequately support the Defendant's position with respect to the claimed exemptions. On the other hand, the Plaintiffs have offered nothing but argument and affidavits based on assumptions, conclusions, suspicions, and opinions.

(2) An appeal from the Summary Judgment at this time would require a remand for the development of a more adequate record. The Court disagrees.

The record is adequate to support the Court's decision.

(3) Some of the investigations which are the subject of this litigation are no longer pending investigations ... these investigations include the North Carolina American Nazi Party, Communist Workers Party, and Greenkil investigation.

The Defendant acknowledges that the investigation of the Communist Workers' Party has recently been completed and the FBI is currently processing documents to ensure that no other exemption applies and if not will release those documents to the Plaintiffs. The Defendant further points out that by letter dated November 18, 1985, 925 pages were released to Plaintiffs. (See Defendant's Memorandum, filed January 27, 1986, Note 1 Page 3 and Note 6, Page 16.)

As to the North Carolina American Nazi Party, the Defendant states that the FBI has released all documents responsive to Plaintiffs' request with exempt portions deleted.

The Defendant in Footnote 1 of its Memorandum, filed January 27, 1986, states the investigation into the Communist Workers' Party has recently been concluded and the FBI is currently processing documents to ensure that no other exemption applies and if not to release these documents to Plaintiffs, 975 pages of which were released by letter dated November 18, 1985.

(4) The Plaintiffs contend that the Court has lumped several exemptions together in one paragraph and that the Plaintiffs need further clarification as to how or why the Court concluded that the balance did not weigh in favor of the Plaintiffs with respect to the other subsections of Exemption 7 and then cites the balancing test illustrated on Page 16 of its Memorandum of Decision filed December 18, 1985. That is about as plain as the Court can state it. However, the Court will amend its judgment to attempt to clarify it even more.

The Plaintiffs then continue: "The public certainly has an interest in effective law enforcement. Where there is evidence that the FBI has conducted an investigation in bad faith there is significant public interest in this information." The short answer is that the Plaintiffs have produced no evidence that the investigations which are the subject of this litigation were conducted in bad faith other than to include the copy of the Subcommittee of the House Judiciary Committee referred to previously. The Court must weigh the potential damage to the public by having divulged in a newspaper the names of undercover agents, the investigative techniques, and potential targets against the interest of newspaper readers in a story about these

matters, and the interest of the criminal element in these investigations and possible future investigations stemming therefrom.

 Having considered all the Plaintiffs' contentions in its Motion to Vacate Summary Judgment and to Grant a Hearing and Reconsideration and then Clarification of any Final Judgment pursuant to Rules 59(e) of the F.R.C.P., and having also considered the Defendant's Motion to Vacate Summary Judgment the Court is of the opinion that the *in camera Vaughn* Index prepared by the Defendant should not be made public nor released to Plaintiffs' counsel, that an evidentiary hearing would add nothing to the voluminous record already before the Court, and that the record is sufficient for review by the appellate court.

An Order will be filed simultaneously with this Memorandum of Decision.

### ORDER

THIS MATTER is before the Court on Plaintiffs' Motion to Vacate Summary Judgment and Orders entered on December 18, 1985, and to Grant Hearing and Reconsideration and then Clarification of Any Final Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, and Defendants' opposition to this Motion. In accordance with the Memorandum of Decision filed simultaneously,

IT IS ORDERED that Plaintiffs' Motion is *DENIED*, and IT IS FURTHER ORDERED that this Court's Order, dated December 18, 1985, is amended to provide that:

(1) Documents requested by Plaintiffs' request dated December 13, 1983, request dated February 6, 1984, and two requests dated February 28, 1984 for documents from the FBI Headquarters and Charlotte Field Office regarding Colcor, Superglide, and Countervail investigations are exempt from disclosure under exemption (b)(7)(A) to the FOIA because these documents relate to an ongoing investigation and disclosure of these documents would jeopardize these investigations.

(2) Documents responsive to Plaintiffs' two requests dated February 28, 1984 for documents from the FBI Headquarters and Charlotte Field Office regarding the American Nazi Party investigations have been produced to Plaintiffs, with protected portions deleted. The Court finds that each are exempt from disclosure because the FBI has demonstrated to the Court that each deletion from each document is proper under exemptions (b)(7)(C) and (b)(7)(D) as noted on each document. These deletions are necessary to protect against unwarranted invasion into personal privacy and to prevent the disclosure of the identity of a confidential source or of information furnished by a confidential source.